# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION
### CIVIL ACTION NO. 3:20-cv-00667-CHB-CHL

PAULA BRYSON,                                                    **Plaintiff,**

**v.**

COMMISSIONER OF SOCIAL SECURITY,[1]                      **Defendant.**

## REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff, Paula Bryson ("Bryson"). Bryson seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation. (DN 15.) Bryson and the Commissioner each filed a Fact and Law Summary. (DNs 16, 22.) Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

## I.    BACKGROUND

On January 29, 2018, Bryson protectively filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability beginning on July 31, 2017. (R. at 233-46.) On June 17, 2019, Administrative Law Judge ("ALJ") Steven Collins ("the ALJ") conducted a hearing on Bryson's application. (*Id.* at 43-90.) In a decision dated October 1, 2019, the ALJ engaged in the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (*Id.* at 22-42.) In doing so, the ALJ made the following findings:

---

[1] As Kilolo Kijakazi is now the Acting Commissioner of Social Security in place of Andrew Saul, she is automatically substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d).

1.      The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.  (*Id.* at 28.)

2.      The claimant has not engaged in substantial gainful activity since July 31, 2017, the alleged onset date.  (*Id.*)

3.      The claimant has the following severe impairments: chronic obstructive pulmonary disease, emphysema, obesity, hypothyroid/Hashimoto's, right shoulder high grade bursal side partial thickness and tear, degenerative disc disease, depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder.  (*Id.*)

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id.*)

5.      [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: With the dominant right upper extremity, she is limited to lifting up to 10 pounds occasionally and less than 10 pounds frequently.  With the non-dominant left upper extremity, she is limited to lifting 20 pounds occasionally and 10 pounds frequently.  She is limited to sitting/standing/walking about 6 hours in an 8-hour workday.  She can occasionally climb ramps and stairs.  She can occasionally stoop.  She should never crawl.  She should never climb ladders, ropes, or scaffolds.  She is limited to occasional overhead reaching with the dominant right upper extremity.  She should avoid concentrated exposure to extreme cold, extreme heat, humidity, and pulmonary irritants including fumes, odors, dusts, gases, and poor ventilation.  She is limited to simple routine tasks involving only simple work related decisions. She is limited to few, if any, workplace changes. She would be able to work over 2 hour segments over an 8-hour workday. She is limited to occasional contact with supervisors, coworkers, and the public.  (*Id.* at 31.)

6.      The claimant is unable to perform any past relevant work.  (*Id.* at 35.)

7.      The claimant was born on April 25, 1971 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  (*Id.*)

8.      The claimant has a limited education and is able to communicate in English.  (*Id.* at 36.)

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  (*Id.*)

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (*Id.*)

11.    The claimant has not been under a disability, as defined in the Social Security Act, from July 31, 2017, through the date of this decision.  (*Id.* at 37.)

Bryson subsequently requested an appeal to the Appeals Council, which denied her request for review on July 27, 2020.  (*Id.* at 1-6, 232.)  At that point, the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 422.210(a) (2020); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. § 422.210(c), Bryson is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Bryson timely filed this action on September 24, 2020.  (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 404-434, 1381-1383f.  An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2020).

### A.    Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.  Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920 (2020). In summary, the evaluation process proceeds as follows:

(1)  Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)  Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)  Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)  Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2020).

(5)     Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.     Bryson's Contentions

Bryson challenged the ALJ's findings Nos. 5, 9, 10, and 11.  (DN 16, at PageID # 1155, 1160.)  In particular, Bryson argued that the ALJ erred in determining her RFC for multiple reasons including failing to provide sufficient narrative discussion to support his determination, failing to consider the effects of her impairments in combination, improperly assessing her pain, and improperly assessing certain opinion evidence in the record.  (*Id.* at 1155-60.)  Bryson also argued that the ALJ erred in not making a determination regarding transferability of skills and because his hypothetical to the vocational examiner ("VE") was based on the improper RFC determination at an earlier step.  (*Id.* at 1160.)  The undersigned will consider each of these arguments separately below.

### 1.     RFC

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a)(1), 416.946(c) (2020).  The ALJ bases his or her determination on all relevant evidence

in the case record, including statements from medical sources.  20 C.F.R. §§ 404.1529, 416.929 (2020); 20 C.F.R. §§ 404.1545(a)(1)-(4), 416.945(a)(1)-(4).   Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations.  20 C.F.R. §§ 404.1520c, 416.920c (2020); 20 C.F.R. §§ 404.1529(a), 416.929(a).

Here, the ALJ found that Bryson had the RFC to perform light work with certain additional exertional limitations including lifting restrictions for her upper extremities; a limitation on her ability to reach overhead with her right upper extremity; limitations on her ability to sit/stand/walk during an eight-hour workday; and limitations on her ability to climb ramps and stairs, stoop, crawl, and climb ladders, ropes, and scaffolds.  (R. at 31.)  The ALJ also put restrictions on Bryson's ability to interact with certain environmental conditions such as extreme hot/cold, humidity, and pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation.  (Id.) Additionally, the ALJ found that Bryson could perform simple, routine tasks; tolerate few, if any, workplace changes; work for two-hour segments in an eight-hour day; and only have occasional contact with her supervisors, coworkers, and the public.  (Id.).  In reaching this determination, the ALJ relied on Bryson's recitations of her own history and limitations, her medical records, and the opinion evidence in the record.  (Id. at 31-35.)  Bryson contended that the ALJ erred in determining that she had the RFC to perform light work for multiple reasons, which the undersigned will address separately below.  (DN 16, at PageID # 1155-60.)

a)      **Right Shoulder Impairment**

Bryson argued that the ALJ did not include a sufficient narrative discussion supported by citations to the record to substantiate his conclusion that she could sustain light work.  (DN 16, at PageID # 1155-56.)  SSR 96-8p states that an ALJ's assessment of a claimant's RFC "must include

a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. 34,474, 34,478 (July 2, 1996). It requires an ALJ's RFC finding to address in a function-by-function evaluation both the exertional and nonexertional capabilities of an individual. *Id.* at 34,476-77. Exertional limitations relate to an individual's ability to sit, stand, walk, lift, carry, push, and pull. *Id.* at 34,477. Nonexertional limitations relate to an individual's potential postural, manipulative, visual, communicative, and mental limitations and ability to tolerate various environmental factors. *Id.* However, "case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (per curiam); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).

Bryson challenged the ALJ's narrative discussion of the exertional limitations related to her right shoulder. (DN 16, at PageID # 1155-56.) The ALJ noted Bryson's testimony during the hearing that her shoulder pain limits "her ability to engage in daily activities that involve prolonged exertion, standing and/or walking, and lifting and/or carrying." (R. at 31.) He recounted that Bryson complained to her providers of right shoulder pain. (*Id.* at 32 (citing 560-649).) He cited the findings from a March 2018 MRI that showed high grade bursal side partial thickness and humerus microfracture/bone marrow contusion and raised concern about a chronic interstitial longitudinal tear of her bicep tendon. (*Id.* (citing 566).) He noted that she saw a chiropractor for her back and shoulder. (*Id.* (citing 957-1084).) He recounted that her final chiropractic exam in December 2018 documented decreased ranged of motion, tenderness, and positive orthopedic tests of her right shoulder and wrist but also 4/5 or 5/5 upper extremity strength and normal reflexes. (*Id.* (citing 1080-81).) He noted that she engaged in chiropractic therapy and physical therapy for

her shoulder and back and that she also treated her conditions with heat, ice, pain medication, sleep/rest, and stretching.  (*Id.* (citing 845-930, 957-1084).)  He noted that there were instances in the record of normal range of motion and that she consistently exhibited no acute distress during examinations.  (*Id.* at 33 (citing 449, 453, 563, 569, 576, 589, 759, 863, 870, 887, 902, 909, 934, 937).)  He emphasized that Bryson's obesity affected her musculoskeletal condition and "result[ed] in greater limitations than might be expected without the obesity."  (*Id.* at 33.)  He noted that "[i]n spite of her weight, [Bryson's] musculoskeletal and extremity reviews were commonly free of clubbing, cyanosis, or edema."[3]  (*Id.* (citing 449, 596, 576, 580, 582, 595, 759, 766, 774, 776, 934, 937, 940).)  He cited that Bryson had a somewhat normal level of daily activities and worked sporadically after the alleged onset date.  (*Id.* at 33.)  The ALJ also cited in support to the opinion of one of the state agency physicians, Dr. Karen Sarpolis, who opined that Bryson could occasionally lift and/or carry 25 lbs and frequently lift and/or carry 10 lbs but should be limited to lifting only 10 lbs occasionally and 5 lbs frequently with her right arm.  (*Id.* at 34 (citing 136).)  Dr. Sarpolis also opined that Bryson should be limited to only occasional overhead reaching with her right arm but could reach a desktop frequently.  (*Id.* (citing 137).)  The ALJ found Dr. Sarpolis's opinion persuasive, "supported by documented review of the available medical evidence at the time of her review," and "consistent with the observations from the claimant's other medical providers, diagnostic test results, and physical exam findings, which documented some abnormalities including . . . decreased range of motion, tenderness, and positive orthopedic tests . . . ."  (*Id.* (citing 449, 563, 566, 653, 810, 821, 826, 879, 887, 894, 902, 909, 934, 937, 955-56,

---

[3] Based on the undersigned's review, some of the records cited by the ALJ specifically reference no *lower* extremity edema as opposed to no extremity edema.  (*Compare id.* at 580, 766, 776 (noting no lower extremity edema), *with id.* at 449, 569, 576, 582, 595, 759, 774, 934, 937, 940 (noting no peripheral edema in extremities).)  Because the ALJ referenced these records during his discussion of Bryson's musculoskeletal condition generally to include both her shoulder and back impairments, the undersigned does not find any error in the generalization.

959, 992, 1038, 1080-81).)  He then found that ultimately Bryson's right shoulder impairments would be "accommodated by the restriction to lifting up to 10 pounds occasionally and less than 10 pounds frequently with the dominant upper extremity, as well as occasional overhead reaching with the dominant right upper extremity." (*Id.* at 35.)  Bryson argued that that ALJ's narrative discussion was insufficient to comply with SSR 96-8p.  (DN 16, at PageID # 1155-56.)  The undersigned disagrees as the ALJ provided an extensive discussion—supported by citations to the record—of the medical evidence related to Bryson's right shoulder impairment and how he crafted the limitations found in his RFC.  This is sufficient for purposes of SSR 96-8p.  *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 116-18 (6th Cir. 2010) (concluding that ALJ complied with SSR 96-8p where he provided an "extensive discussion" of the evidence in arriving at the applicant's RFC.  While Bryson disagrees with the ALJ's conclusion, this does not create a procedural failure by the ALJ to follow the applicable rules regarding what to discuss in his opinion in this particular case.

Bryson also argued that that ALJ inappropriately parsed the instances of normal and abnormal findings in the record and substituted his own medical opinion for that of experts.  (DN 16, at PageID # 1158.)  The record does appear to contain more abnormal than normal findings regarding Bryson's shoulder.  It supports that Bryson had a history of right shoulder pain related to a rotator cuff injury she suffered in approximately 2010.  (R. at 615, 739.)  Her medical records consistently list right shoulder pain, shoulder joint pain, chronic tear of right rotator cuff tendon, disorder of rotator cuff syndrome of shoulder and allied disorder, and/or chronic pain syndrome as either part of Bryson's past medical history or an active/assessed problem.  (*Id.* at 451, 561, 567, 575, 581, 600, 609, 617, 707, 710, 713, 717, 720, 722, 726, 731, 736-37, 740-43, 757, 766-67, 771-72, 776-77, 781-82, 846, 851, 859, 866, 875, 882, 889-90, 897-98, 905-06.)  Her providers

routinely documented joint pain and stiffness (*id.* at 560, 563, 569, 707, 713, 720, 726, 730, 736, 742, 848, 854, 862, 869, 879, 886, 893, 902, 908) and abnormal range of motion with the right shoulder being worse than the left, and/or tenderness (*id*. at 563, 569, 709, 716, 722, 728, 733, 959-60, 958, 992-93, 1038-39, 1080-81). They also found limited instances of arthralgia. (*Id.* at 742, 560.) After her motor vehicle accident, between October 22, 2018, and December 19, 2018, her chiropractor documented varying levels of right shoulder pain. (*Id.* at 958, 963-64, 967-68, 971-72, 975-76, 979-80, 983-84, 992, 998, 1001-02, 1005-06, 1009-10, 1013-14, 1017-18, 1021-22, 1025-26, 1029-30, 1033-34, 1043-44, 1047-48, 1051-52, 1055-56, 1063-64, 1067-68, 1071-72, 1075-76, 1080.) However, the medical records also note a number of normal findings including findings of the absence of joint swelling (*id.* at 602, 707, 713, 720, 726, 730, 736, 739, 742, 776, 781); extremity or peripheral edema (*id.* at 449, 453, 569, 576, 582, 595, 709, 716, 722, 728, 732, 737, 741, 743, 759, 774, 934, 937, 940); arthralgias (*id.* at 602, 707, 713, 720, 726, 730, 736, 739, 776, 781); joint pain (*id.* at 448, 739, 936, 939); joint stiffness (*id.* at 739, 776, 781); limb pain (*id.* at 602, 739); limb swelling (*id.* at 707, 713, 720, 726, 730, 736, 739); shoulder pain (*id.* at 739); limb/extremity weakness (448, 707, 713, 720, 726, 730, 933, 936, 939); fingernail clubbing and localized cyanosis (*id.* at 453, 569, 616); myalgias (*id.* at 776, 781); or cramps and muscle aches (*id*. at 448, 936, 939), as well as instances of normal range of motion (*id.* at 449, 934, 937, 940). While the ALJ's opinion did emphasize the normal findings, he did not wholly ignore the abnormal findings. Further, Bryson pointed to no medical opinion in the record to support that these sometimes conflicting findings as a whole justify a greater degree of limitation than that found by the ALJ. Though she criticized the ALJ for substituting his own medical judgment for that of experts, she seems to request that the Court do exactly that as the ALJ based his opinion on the opinion of state agency physician Dr. Sarpolis, the only medical opinion in the record regarding

Bryson's right shoulder impairment.  The ALJ adopted in large part Dr. Sarpolis's opinion and otherwise imposed greater limitations on Bryson's ability to climb ramps and stairs; stoop; and climb ladders, ropes, and scaffolds, as well as restricted Bryson to light instead of medium work. (*Id.* at 34.)  As noted by the Commissioner, the ALJ is not required to base his determination of a claimant's RFC on a medical opinion.  *See, e.g.*, *Rudd*, 531 F. App'x at 728 ("[T]he ALJ was not require to base her determination [of the claimant's RFC] on a medical opinion . . . .").  However, the instant case is not one where the ALJ formed an opinion based on no medical opinion evidence at all as Bryson seems to suggest.  The ALJ's opinion cited numerous medical records regarding Bryson's right shoulder supporting the RFC he formulated, including at least one medical opinion. Thus, based on the undersigned's review of the record, the undersigned finds that the ALJ's discussion of Bryson's right shoulder impairment and resulting RFC was supported by substantial evidence.  As such, while the undersigned acknowledges the existence of contrary evidence, the undersigned's role is not to inquire "if substantial evidence would also have supported the opposite conclusion." *Gayheart*, 710 F.3d at 374.  *See also Smith*, 893 F.2d at 108; *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (noting that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess," and reversal is not "warranted even if substantial evidence would support the opposite conclusion").

### b)       Back Pain

Bryson also claimed that the ALJ improperly evaluated and discussed her complaints of back pain.  (DN 16, at PageID # 1155, 1158.)  As with his discussion of Bryson's right shoulder impairment, in formulating his RFC, the ALJ discussed Bryson's own testimony regarding her back.  (R. at 31.)  He noted her testimony that her back pain, like her shoulder pain, limits "her ability to engage in daily activities that involve prolonged exertion, standing and/or walking, and

lifting and/or carrying." (*Id.*)  He recounted that an MRI of Bryson's lumbar spine showed a "posterior annular tear at L4-5, annular bulge in disc L4-5 and L5-S1, and facet arthrosis." (*Id.* at 32 (citing 956).)  He noted that she treated for her back with physical and chiropractic therapy and that she also treated her conditions with heat, ice, pain medication, sleep/rest, and stretching. (*Id.* (citing 845-930, 957-1084).)  He cited that her final chiropractic exam in December 2018 showed that she had a normal range of motion in her back with only mild pain. (*Id.* (citing 1081).)  He stated that though Bryson's physical therapy records showed a decreased lumbar range of motion, positive straight leg test, and spasms in her bilateral piriformis, she consistently demonstrated no abnormality in her gait. (*Id.* at 32-33 (citing 480-81, 489, 504-05, 507, 510, 563, 653, 810, 821, 879, 887, 894, 902, 909, 959, 992, 1038, 1080).)  He noted that Bryson had a somewhat normal level of daily activities and worked sporadically after the alleged onset date. (*Id.* at 33-34.)  He also cited to the opinion of state agency physician Dr. Sarpolis discussed above, finding portions of her opinion persuasive and mirroring Dr. Sarpolis's findings regarding Bryson's ability to sit/stand/walk six hours in an eight hour work day. (*Id.* at 31, 34 (citing 136-38).)  However, he ultimately found that "[t]o account for decreased agility from musculoskeletal symptoms, . . . [Bryson] c[ould] only occasionally climb ramps and stairs, occasionally stoop, and never crawl or climb ladders, ropes, or scaffolds." (*Id.* at 35.)  Again and as noted above, he also restricted Bryason to light work instead of the medium work Dr. Sarpolis determined Bryson could perform. (*Compare id.* at 31, *with id.* at 136-38.)

Bryson claimed that the ALJ did not consider all evidence of record regarding her back pain, citing in particular to physical and chiropractic therapy records that she claimed demonstrated a greater level of impairment than that determined by the ALJ. (DN 16, at PageID # 1158.)  As a starting point, "[a]lthough required to develop the record fully and fairly, an ALJ is not required

to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). Here, however, the ALJ did cite to portions of the physical therapy and chiropractic records found at Exhibits 12F, 15F, and 16F of the administrative record that Bryson claims he ignored in his decision. (*See* R. at 28 (citing Ex. 12F; Ex. 16F; 16 F/3, 36, 82, 124), 32 (citing 12F; 15F; 15F/2, 3; 16F; 16F/124-25), 33 (citing 16F/4, 37, 83, 125), 34 (citing 12F, 15F, 16F).) Thus, Bryson's argument is dispelled by a close review of the ALJ's opinion.

A review of the chiropractic and physical therapy records themselves does not reveal evidence inconsistent with the ALJ's determination. The ALJ noted the findings of the MRI performed at the request of Bryson's chiropractor as outlined above. (*Id.* at 32 (citing 956).) Her chiropractic care records demonstrated that she improved with treatment. While she initially complained of a constant mild, dull-ache pain in her mid-back and moderate, sharp, constant pain in her lower back, by the conclusion of her chiropractic treatment her mid-back pain was intermittent and her low back pain was occasional. (*Compare id.* at 958, *with id.* at 1079.) At her initial exam in October 2018, she had decreased range of motion in her cervical, lumbar, and thoracic spine with moderate pain. (*Id.* at 959-60.) At her final exam in December 2018, her cervical range of motion was within normal limits and she had full range of motion in her lumbar and thoracic spine with mild pain. (*Id.* at 1081.) Her chiropractor noted multiple times that her condition had improved. (*Id.* at 998, 1018, 1052, 1076.) Her physical therapy records likewise noted that while she retained decreased range of motion, Bryson reported decreased pain after each treatment and a decrease in spasms. (*Id.* at 910-30, 920.) These records are consistent with the

portions of them cited by the ALJ in support of his decision despite Bryson's assertions to the contrary.  The ALJ never determined that Bryson had no pain; he just disagreed that her pain limited her to the extent she claimed and supported his position with medical evidence, including opinion evidence.  Thus, the undersigned finds that the ALJ supported his RFC finding regarding Bryson's back pain with substantial evidence.  To the extent that Bryson prompts the Court to consider whether substantial evidence would have supported the conclusion opposite the one reached by the ALJ, it would be inappropriate for the Court to engage in that analysis, and the undersigned declines to do so.  *See Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman,* 693 F.3d at 714.

Bryson also claimed the ALJ erred in omitting and failing to discuss "the treating doctor's statement that Bryson had a permanent impairment and would have intermittent exacerbations and remissions."  (DN 16, at PageID # 1158 (citing R. at 1083).)  At her final chiropractic exam, her chiropractor noted that in his opinion, Bryson had sustained a permanent impairment and that her injuries were "subject to episodes of remission and intermittent exacerbation."  (R. at 1083.) Bryson cited no authority to support that the ALJ was bound by this opinion or that it was in fact an opinion at all.  The statement by her chiropractor did not discuss any functional or exertional limitations or address her overall functioning other than to conclusively state the existence of an "impairment" and a need for future treatment.  (*Id.*)  A medical opinion is defined by the applicable regulations as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) (2020).  Bryson failed to cite any authority to prove that the chiropractor's conclusory statements met this threshold.  Further, to the extent that by stating an "impairment," the chiropractor meant that Bryson was disabled, the ALJ is not required

to discuss in his decision how he considered any statements on issues that are reserved for the Commissioner such as whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520b(c)(3); 416.920b(c)(3) (2020).  As evidenced above, the ALJ also thoroughly considered and discussed the records of Bryson's chiropractic treatment generally.  The undersigned finds Bryson's argument regarding the ALJ's lack of discussion of her chiropractor's "opinion" without merit.

Based on the above analysis, the undersigned finds the ALJ's discussion of Bryson's back pain and associated determination of her RFC to be supported by substantial evidence and in compliance with the applicable regulations.

### c)      Anxiety

Bryson argued that her severe anxiety was supported by the record and that the ALJ failed to account for the limitations related to the same in formulating her RFC.  (DN 16, at PageID # 1157.)  As with her back pain and right shoulder impairment, in evaluating her mental impairments, the ALJ noted Bryson's testimony that "she experiences frequent and unpredicted anxiety attacks" and has "difficulty focusing, concentrating, and comprehending."  (R. at 31.)  The ALJ noted that Bryson's medical records substantiated that she had panic attacks and generalized anxiety disorder, among other mental symptoms/impairments.  (*Id.* at 33.)  He emphasized that her mental health treatment largely consistently of "medication management and follow up evaluations."  (*Id.* (citing 845-909, 941-53).)  He cited that medication appeared to treat her conditions and that "treatment records generally described her to be awake, alert, oriented, and cooperative without noted behavioral, speech, emotional, cognitive, or concentration deficits."  (*Id.* (citing 845-909, 941-53).)  He noted that Bryson had never been hospitalized for a psychiatric reason.  (*Id.*)  He also cited in support to an April 2018 consultative examination and the opinions of the state agency psychological consultants, all of which will be discussed in more detail below.  (*Id.* at 33-34.)  He

ultimately found that her moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; interacting with others; and adapting or managing herself were accommodated by an RFC restricting her to simple routine tasks involving only simple work-related decisions; only working two hour segments over an eight-hour work day; restrictions on her ability to interact with supervisors, coworkers, and the public; and restriction to few, if any, workplace changes.  (*Id.* at 29-30, 35.)  Though Bryson contended her severe anxiety supported greater limitations, she failed to identify those limitations with any specificity or point to any opinion evidence in the record supporting a need for greater limitations.  After consideration of the medical opinion evidence, the ALJ even imposed greater limitations than those considered by the CE and the state agency psychological consultants to account for his own consideration of Bryson's mental records.  Given this and the evidence cited in his decision, the undersigned finds the ALJ's assessment of Bryson's anxiety supported by substantial evidence and in compliance with the applicable regulations.

### d)       Combination of Impairments

Bryson argued that the ALJ failed to consider whether the combination of her impairments made her disabled.  (DN 16, at PageID # 1157-58.)  The ALJ is required to consider the combined effect of a claimant's impairments in determining whether the claimant is disabled.  20 C.F.R. §§ 404.1523, 416.923 (2020).  Discussing multiple impairments individually does not mean the ALJ failed to consider the combined effect of those impairments where the ALJ specifically referred to a "combination of impairments" in finding that the claimant did not meet the Listings.  *Gooch v. Sec'y of Health & Hum. Servs.*, 833 F.2d 589, 592 (6th Cir. 1987), *cert. denied*, 484 U.S. 1075 (1988); *Loy v. Sec'y of Health & Hum. Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990).  Here, in his step three finding regarding the listings, the ALJ specifically noted that Bryson did "not have an

impairment or combination of  impairments that meets or medically equals the severity of one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 28.)  He also

specifically referenced the "combined effects" of Bryson's "musculoskeletal, respiratory,

cardiovascular, digestive, hematological, immune system and mental co-morbidities" in his

discussion of how Bryson's obesity affected her RFC and noted at the outset of his RFC

determination that in making that determination he had considered "all symptoms and the extent

to which these symptoms can reasonably be accepted as consistent with the objective medical

evidence and other evidence." (*Id.* at 31, 33.)  These statements likewise evidence that the ALJ

properly considered Bryson's impairments in combination though he may have discussed them

individually in his decision. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851-52 (6th Cir.

2020).  While Bryson argued that the ALJ should have discussed the combined effect of her anxiety

and right shoulder pain and her breathing and anxiety in more detail, she failed to cite to any

medical records or opinion evidence indicating that those symptoms in combination require greater

restrictions than those imposed by the ALJ.   Accordingly, the undersigned finds Bryson's

argument to be without merit.

e)      **Pain**

Bryson argued that the ALJ improperly assessed her testimony regarding her pain and

discounted her credibility.  (DN 16, at PageID # 1155-57, 1159.)  Though Bryson uses the term

credibility, that term is not used by the regulations.  Instead, the regulations note that a claimant's

statement that he or she is experiencing pain or other symptoms will not, taken alone, establish

that he or she is disabled; there must be medical signs and laboratory findings that show the

existence of a medical impairment that could reasonably be expected to give rise to the pain and/or

other symptoms alleged.  20 C.F.R. §§ 404.1529(a), 416.929(a).  If the ALJ finds that there is a

medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then assess the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work.   20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  In doing so, the ALJ should consider a number of factors including a claimant's daily activities, effectiveness of any medication taken to relieve symptoms, and any side effects of that medication.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929) ("Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.").  However, the regulations only require an ALJ to *consider* the pertinent factors; they do not require the ALJ to discuss all the factors in his or her opinion.  *See Dutkiewicz v. Comm'r of Soc. Sec.,* 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss [claimant]'s work history when assessing his credibility . . . .").

In particular, Bryson challenged the ALJ's treatment of her testimony that when reaching overhead, she has to hold her right arm with the left.  (DN 16, at PageID # 1156.)  She claimed this was "uncontradicted evidence of the inability to use her right arm overhead for up to one-third of each day, five days a week" and that the ALJ erred by not crediting this testimony and adopting it in his RFC.  (*Id.* at 1156-57.)  As noted above, the ALJ did consider Bryson's statements regarding her right shoulder impairment in formulating his RFC.  He also considered the medical evidence of record, which he viewed as supporting a lesser level of limitation than that claimed by

18

Bryson.  The undersigned already found above that the ALJ's RFC determination regarding Bryson's shoulder was supported by substantial evidence.  The ALJ found that Bryson's daily activities and work history after her alleged onset date contributed to his conclusion that he was not as limited as she alleged.  (R. at 33-34.)  He emphasized that she admitted in function reports from February and August 2018 to driving, shopping in stores, handling her own funds, doing light cleaning, dressing, and feeding herself.  (*Id.* at 33.)  He then noted that her work after the alleged onset date raised a question as to whether her medical impairments were actually the cause of her unemployment because she had also reported to the psychological consultative examiner ("CE") that she stopped working to care for her daughter.  (*Id.* (citing 555).)  Bryson disputed this characterization and argued that it was error for the ALJ to rely on such an interpretation as the focus of his analysis was not supposed to be on her truthfulness.  However, the undersigned finds there to be no error because the ALJ merely noted the possibility of an inconsistency in the record but went on to conclude that "[e]ven if [Bryson]'s current unemployment were truly the result of her medical conditions, the fact that she engaged in some work activity after the alleged onset date indicates that her daily activities have, at least at times, been somewhat greater than [Bryson] has alleged."  (*Id.* at 33-34.)  Accordingly, the undersigned finds no error in the ALJ's reliance on Bryson's daily activities and work history after the alleged onset date to discount her allegations of disabling pain and limitations, particularly in light of the supporting medical evidence cited above regarding her capabilities.  The undersigned likewise finds that the ALJ's assessment of Bryson's pain was supported by substantial evidence and in compliance with the applicable regulations.

f)       **Opinion Evidence**

Bryson also argued that the ALJ erred in his assessment of certain opinion evidence in the record including the opinion of her treating chiropractor, the psychological CE Leslie Jenkins, Ph.D. ("CE Jenkins"), and the state agency psychological consultants.  (DN 16, at PageID # 1158, 1160.)   The undersigned has already addressed above Bryson's argument regarding her chiropractor's impairment determination and will not repeat the same herein.  As to the remaining medical opinion evidence, the new regulations for evaluating medical opinions are applicable to Bryson's case because she filed her application after March 27, 2017.  Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[4]  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead,  an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(a), (c); 20 C.F.R.  § 416.920c(a), (c).   The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions."  20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2).  However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with

---

[4] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2020).

the claimant,[5] specialization, and other factors.[6]    20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2).   Where two medical opinions reach different conclusions but are equally "well-supported . . . and consistent with the record," the ALJ is required to state how he or she considered the other three factors in making his or her decision.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  *But see Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims").  However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally.  *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021) (to be published) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source.  Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021

---

[5] In assessing this factor, the regulation requires an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

[6] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).  These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements."  20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Here, CE Jenkins found that Bryson's depression and anxiety did not affect her capacity to understand, retain, and follow instructions toward the performance of simple, repetitive tasks or to respond appropriately to co-workers, supervisors, and the general public in a work setting.  (R. at 557.)  CE Jenkins also concluded that Bryson had a mild limitation on her ability to sustain attention and concentrate and a moderate-to-marked limitation on her ability to tolerate the stress and pressure of day-to-day employment.  (*Id.*)  CE Jenkins noted in her opinion that while Bryson's "history support[ed] a clinical level of anxious and depressive symptoms, [ ] her reports at present [we]re limited and difficult to ascertain due to concerns for exaggerated impairment."  (*Id.* at 556.)  The state agency psychological consultants, Mary K. Thompson, Ph.D. ("consultant Thompson"), and Gary Perry, Ed.D. ("consultant Perry"), found Bryson to have a mild limitation on her ability to understand, remember, and apply information; to interact with others; and to concentrate, persist, and maintain pace, but a moderate limitation on her ability to adapt or manage herself.  (*Id.* at 97, 109, 123, 134.)  The ALJ found the opinions of CE Jenkins, consultant Thompson, and consultant Perry persuasive.  (*Id.* at 34.)  In support, the ALJ noted that these opinions, and in particular their conclusions regarding Bryson's ability to adapt and mange herself, were "supported by documented review of the available medical evidence at the time of their review, as well as

consistent with observations from the claimant's other medical providers, mental health treatment records, and mental status exam findings.  (*Id.*)  In doing so, he cited generally to Bryson's mental health treatment records.  (*Id.* (citing 845-909, 941-53).)  However, he noted that in his view the medical records better supported moderate limitations in the other three domains and specifically incorporated his detailed discussion from his step three analysis again citing generally to Bryson's mental health records and hearing testimony.  (*Id.*)

Bryson argued that the ALJ did not determine whether CE Jenkins's conclusion regarding her "symptom exaggeration" was consistent with and supportable by the record as a whole as required by the applicable regulations.  (DN 16, at PageID # 1160.)  In support of his step three analysis, the ALJ had cited specific medical records regarding all three Paragraph B criteria.  (R. at 29-30.)  Contrary to Bryson's contention, the undersigned finds that the ALJ provided a sufficient discussion of his view of the supportability and consistency of the opinions of CE Jenkins, consultant Thompson, and consultant Perry to allow the Court to trace the path of his reasoning.  In particular, his reference to a previous section of his opinion containing a detailed discussion supported by citations to medical records makes his analysis sufficiently clear to enable meaningful review.  Accordingly, the undersigned rejects Bryson's argument that the ALJ failed to comply with his procedural responsibility to discuss the supportability and consistency factors.

Bryson also argued that the ALJ should have resolved an inconsistency between CE Jenkins's finding that Bryson exaggerated her symptoms and the state agency psychological consultants' finding that Bryson had a histrionic personality.  (DN 16, at PageID # 1159-60.)  An examination of the records demonstrates that Bryson is attempting to create an inconsistency where none exists.  Consultant Thompson on initial review noted in her explanation of her findings that CE Jenkins had found "indications of symptom exaggeration versus histrionic presentation."  (R.

at 98, 109.)  However, consultant Thompson also noted that Bryson's "statements regarding mental restrictions are partially consistent given objective findings, which indicate less severity and persistence than [Bryson] reports." (*Id.* at 98, 109.)  Similarly, consultant Perry on reexamination found that since Bryson alleged no changes or new conditions on appeal, Bryson's updated activities of daily living and medical records were consistent with previous consultant Thompson's findings. (*Id.* at 123, 134.)  While Bryson claims the state agency medical consultants found Bryson to have a medical condition of "histrionic personality," neither consultant Thompson's nor consultant Perry's analysis included such a diagnosis. (*Id.* at 97-98, 108-09, 122-23, 133-34.)  Instead, they listed as impairments Bryson's COPD; anxiety and obsessive-compulsive disorders; and depressive, bipolar and related disorders. (*Id.* at 98, 108-09, 122, 133.)  The undersigned finds no inconsistency in these opinions requiring resolution by the ALJ.

Given the evidence cited by the ALJ and his discussion of the opinions, the undersigned finds the persuasiveness he afforded to the opinions of CE Jenkins, consultant Thompson, and consultant Perry to be supported by substantial evidence and in accordance with the applicable regulations.

### g)        Substantial Evidence Generally

Based on the conclusions above, the undersigned finds that the ALJ's RFC determination was supported by substantial evidence.  Thus, this Court's role is not to second-guess his conclusions. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman,* 693 F.3d at 714.

### 2.        Transferability of Skills and Other Work

Bryson also argued that the ALJ erred in not making a determination regarding the transferability of skills and that his conclusion that there was other work in the economy that Bryson was capable of performing was incorrect.  (DN 16, at PageID # 1160.)  Her entire argument

on these points appears to be that because the ALJ's RFC determination was not supported by substantial evidence these subsequent determinations were also in error.  (*Id.*)  The undersigned has determined above that the ALJ's RFC determination was supported by substantial evidence.  Accordingly, Bryson's arguments regarding Finding Nos. 10 and 11 are without merit.

## III.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

cc:     Counsel of Record

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all Parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).