UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

|  |  |  |
|---|---|---|
| PAULA BRYSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:20-CV-667-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| COMMISSIONER OF SOCIAL | ) | **ORDER ADOPTING MAGISTRATE** |
| SECURITY,[1] | ) | **JUDGE'S REPORT AND** |
| | ) | **RECOMMENDATION** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Paula Bryson filed this action seeking review of Defendant Commissioner of Social Security's denial of Bryson's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). [R. 1]. Bryson and the Commissioner both filed Fact and Law Summaries. [R. 16; R. 22]. Magistrate Judge Lindsay issued a Report and Recommendation ("R&R") on January 2, 2022, [R. 23], recommending that the Commissioner's decision be affirmed. Bryson filed Objections to the R&R, [R. 24], and the Commissioner responded, [R. 25]. For the reasons below, the Court adopts the R&R and overrules Bryson's Objections.

## I.   BACKGROUND

On January 29, 2018, Bryson applied for SSI and DIB, alleging that she was disabled as of July 31, 2017. [R. 14, pp. 238–51]. Her applications were initially denied and again on reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 120–21, 148–49, 183–86. On June 17, 2019, ALJ Steven Collins held a hearing, and subsequently issued an unfavorable decision on October 1, 2019, finding Bryson was not

---

[1] As Kilolo Kijakazi is now the Acting Commissioner of Social Security, she is substituted in place of Andrew Saul as Defendant in this matter pursuant to Fed. R. Civ. P. 25(d).

disabled. *Id.* at 30–42, 49–95. Bryson requested review of ALJ Collins' decision, but the Appeals Council denied her request. *Id.* at 6–8.

In his opinion, ALJ Collins engaged in the five-step sequential process set forth in the regulations under the Social Security Act. 20 C.F.R. § 404.1520(a)–(e); 20 C.F.R. § 416.920; *see Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). At step one, ALJ Collins determined that Bryson had not engaged in substantial gainful activity since July 31, 2017. [R. 14, p. 33]. At step two, he determined that Bryson has the following severe impairments: chronic obstructive pulmonary disease, emphysema, obesity, hypothyroid/Hashimoto's, right shoulder high grade bursal side partial thickness and tear, degenerative disc disease, depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder. *Id.* At step three, ALJ Collins found that none of Bryson's impairments met or medically equaled the severity of one of the listed impairments. *Id.* at 33. He then determined that Bryson had the residual functional capacity ("RFC")[2] to perform light work with the following limitations:

> With the dominant right upper extremity, she is limited to lifting up to 10 pounds occasionally and less than 10 pounds frequently. With the non-dominant left upper extremity, she is limited to lifting 20 pounds occasionally and 10 pounds frequently. She is limited to sitting/standing/walking about 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs. She can occasionally stoop. She should never crawl. She should never climb ladders, ropes, or scaffolds. She is limited to occasional overhead reaching with the dominant right upper extremity. She should avoid concentrated exposure to extreme cold, extreme heat, humidity, and pulmonary irritants including fumes, odors, dusts, gases, and poor ventilation. She is limited to few, if any, workplace changes. She would be able to work over 2 hour segments over an 8-hour workday. She is limited to occasional contact with supervisors, coworkers, and the public.

---

[2] An individual's residual functional capacity is the most an individual can still do despite his or her impairment-related conditions. 20 C.F.R. § 416.945(a)(1).

*Id.* at 36. At step four, ALJ Collins determined that Bryson was unable to perform past relevant work. *Id.* at 40. However, ALJ Collins concluded that Bryson could perform jobs that exist in significant numbers in the national economy. *Id.* at 41. Specifically, a vocational expert testified that an individual with Bryson's age, education, work experience, and RFC could perform occupations such as Assembler, Sorter, and Inspection Packer. *Id.* Consequently, ALJ Collins found that Bryson was not disabled as defined in the Social Security Act from the alleged onset date through the date of his decision. *Id.* at 42. The Appeals Council denied Bryson's request for review, making ALJ Collins' decision the final decision of the Commissioner. *Id.* at 6–8.

On September 24, 2020, Bryson filed this action challenging the Commissioner's denial of benefits on the ground that he improperly determined her RFC. [R. 1]. The Court referred the matter to Magistrate Judge Lindsay, who recommended that the Commissioner's decision be affirmed. [R. 23]. Bryson filed timely objections to the Magistrate's R&R, [R. 24], and the Commissioner responded, [R. 25].

## II.    STANDARD OF REVIEW

When a party objects to a report and recommendation, the Court reviews *de novo* only those portions of the report to which objection is made. 28 U.S.C. § 636(b)(1)(C).  The Court may adopt without review any portion of the report to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review *de novo* the portions of Judge Lindsay's Recommendation to which Plaintiff objects to determine whether relief is warranted.

3

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

To determine disability, the ALJ conducts a five-step analysis:

1. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.
2. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability[.]
3. Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.
4. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.
5. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin*, 475 F.3d at 730 (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). If the ALJ makes a dispositive finding at any point in the five-step analysis, the review terminates. *Colvin*, 475 F.3d at 730; 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof during the first four steps; this burden shifts to the Commissioner at step five to prove

the availability of other work in the national economy that the claimant is capable of performing. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529 (6th Cir. 1997). The claimant always retains the burden of proving lack of RFC. *Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 423 (6th Cir. 2008).

## III.   ANALYSIS

In her Objections to the R&R, Bryson raises similar arguments to those she raised before Magistrate Judge Lindsay. She argues that the Court should not affirm ALJ Collins' decision, because he improperly determined her RFC for the following reasons. First, Bryson contends that ALJ Collins failed to consider all the evidence in the record and that he failed to formulate her RFC in accordance with the state agency doctor's medical opinion, which he found partially persuasive. [R. 24, pp. 2–3]. Second, Bryson argues that ALJ Collins failed to properly evaluate the severity and episodic nature of her back pain. *Id.* at 3–6. Third, Bryson claims ALJ Collins failed to consider the combined effects of all Bryson's impairments. *Id.* at 6–8. Fourth, Bryson contends that ALJ Collins failed to properly assess the medical opinions of record. *Id.* at 8–9. Finally, Bryson generally argues that ALJ Collins' decision was not supported by substantial evidence. *Id.* at 10. The Court will address each argument in turn.

### A.  RFC

An individual's RFC is the most a claimant can still do despite their physical and mental impairments. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The RFC determination is made by an ALJ based upon all the evidence within the record. *Franson v. Comm'r of Soc. Sec.*, 556 F. Supp. 2d 716, 731 (W.D. Mich. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). An ALJ's determination must be supported by substantial evidence. *Fox v. Comm'r of Soc. Sec.*, No. 2:19–cv–0047, 2020 U.S. Dist. LEXIS

69716, at *47–48 (W.D. Mich. Apr. 21, 2020) (citing *Torres v. Comm'r of Soc. Sec.*, 490 F.

App'x 748, 754 (6th Cir. 2012)). However, an ALJ is not required to provide a written evaluation

of every piece of evidence in his opinion; "[r]ather, the ALJ need only say enough to permit an

appellate court to 'trace the path' of the reasoning." *Honeycutt v. Saul*, No. 3:18–cv–509–CRS,

2020 U.S. Dist. LEXIS 49164, at *6 (W.D. Ky. Mar. 20, 2020) (quoting *Stacey v. Comm'r of

Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011)).

### i. Evidence of Right Shoulder Impairment and Dr. Karen Sarpolis's Opinion

Bryson first argues that ALJ Collins' RFC determination is not supported by substantial

evidence because he failed to analyze several pieces of evidence in his opinion. [R. 24, pp. 1–3].

Specifically, she argues that he ignored (1) "the February 2019 quantified findings showing her

pain levels at 3-10/10 level with reduced range of motion in the trunk and weakness and spasm

in the bilateral piriformis muscles;" (2) "her treating doctor's noting her chronic pain based on

objective findings, soft tissue tearing in the shoulder and right arm and that when she worked she

used her arm a lot;" (3) "the quantified evidence of pain existing over 12 months from the

alleged onset date;" and (4) "the note describing the frequency of her pain." *Id.*

Bryson's argument fails because an ALJ is not required to discuss every piece of

evidence in the record in his opinion. *See Daniels v. Comm'r of Soc. Sec*., 152 F. App'x 485, 489

(6th Cir. 2005) (quoting *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)) (quotation

marks omitted) ("[A]lthough required to develop the record fully and fairly, an ALJ is not

required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does

not indicate that it was not considered."); *see also Richardson v. Saul*, 511 F. Supp. 3d 791, 801

(E.D. Ky. 2021) (quoting *Kornecy v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir.

2006)) (quotation marks omitted) ("[A]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party."). Further,

contrary to Bryson's arguments, the ALJ and Magistrate Judge Lindsay considered evidence of

abnormal findings in their opinions. [R. 14, pp. 37–39; R. 23, pp. 7–11]; *see* [R. 24, pp. 1–3].

Both the ALJ and Magistrate Judge Lindsay cited to substantial medical evidence in reaching

their conclusions, including many of the exhibits Bryson refers to. [R. 14, pp. 37–39; R. 23, pp.

9–10]. Therefore, any lack of discussion as to specific findings in those records does not

demonstrate that they failed to consider the record as a whole. To the contrary, the opinions

demonstrate detailed consideration of the "fully and fairly" developed record. [R. 14, pp. 37, 39,

40]; *see also Simons*, 114 F. App'x at 733. Bryson's objection on this point is overruled.

Next, Bryson argues that the ALJ's determination that she could lift "less than 10 pounds

frequently" with her right arm was not supported by substantial evidence. [R. 24, p. 2].

Specifically, she argues that ALJ Collins failed to properly "explain" why his RFC determination

states she can lift "less than 10 pounds frequently" when the opinion of State agency medical

consultant Dr. Karen Sarpolis stated that Bryson was limited to lifting ten pounds occasionally

and *five pounds* frequently. *Id.*; *see also* [R. 14, pp. 39, 141]. In her Response, the Commissioner

argues ALJ Collins did not err in his RFC determination because he was not required to adopt

Dr. Sarpolis's opinion verbatim, but rather, to formulate Bryson's RFC based on all the evidence

in the record. [R. 25, pp. 2–3].

Under SRR 96-8p, 1996 SSR LEXIS 5, an ALJ's RFC assessment "must always consider

and address medical source opinions. *Id.* at *20. However, an ALJ need not adopt a medical

opinion verbatim, even if he found it persuasive. *See Reeves v. Comm'r of Soc. Soc.*, 618 F.

App'x 267, 275 (6th Cir. 2015) ("Although the ALJ gave great weight to Dr. Torello's opinion,

he was not required to incorporate the entirety of her opinion[.]"); *Green v. Comm'r of Soc. Sec.*,

No. 2:20-cv-232, 2020 WL 4877187, at *6 (S.D. Ohio Aug. 20, 2020) ("Although the ALJ assigned Mr. Spindler's opinion 'significant weight,' he was not required to adopt each of Mr. Spindler's proposed functional limitations."). Rather, the RFC determination rests with the ALJ upon his examination of the record as a whole. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]he ALJ is charged with the responsibility of determining the RFC based on [his] evaluation of the medical and non-medical evidence."). In other words, "to require the ALJ to base her RFC finding on a physician's opinion . . . 'would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd*, 531 F. App'x at 728 (quoting SSR 96–5p, 1996 SSR LEXIS 2, 1996 WL 374183 (July 2, 1996)). However, if the ALJ's RFC determination conflicts with a medical source opinion, the ALJ must explain why the opinion was not adopted. *See id*.; *see also Dunlap v. Comm'r of Soc. Sec*., No. 20-4179, 2021 U.S. App. LEXIS 28559, at *20 (6th Cir. Sept. 20, 2021) (quoting SSR 96-8p, 1996 SSR LEXIS 5) ("[I]f the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.'"). Therefore, to succeed on her claim, Bryson must show that either (1) ALJ Collins did not consider Dr. Sarpolis's opinion or (2) that his RFC determination conflicted with Dr. Sarpolis's opinion and that he did not explain the contradiction.

First, upon review of his opinion, it is evident that ALJ Collins considered Dr. Sarpolis's opinion when crafting Bryson's RFC. Pursuant to the new regulations, which are applicable to Bryson's application because she filed after March 27, 2017, ALJ Collins provided a source-level articulation of Dr. Sarpolis's findings, including discussion of the supportability and consistency of her opinions. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *see* [R. 14, p. 39]. Most notably, it is clear that ALJ Collins closely analyzed Dr. Sarpolis's opinion because, after

8

considering the entire record, he varied from it in ways beneficial to Bryson. *See id.* at 39 ("[T]he longitudinal record discussed above better supports a restriction to light work . . . as opposed to Dr. Sarpolis's finding of medium work[.]").

Second, ALJ Collins' RFC determination does not conflict with Dr. Sarpolis's proposed limitation. In *Delisha*, the Western District of New York analyzed whether an ALJ's RFC determination conflicted with a medical opinion. No. 1:20-CV-0779, 2021 U.S. Dist. LEXIS 174996, at \*14–15 (W.D.N.Y. Sept. 15, 2021). The plaintiff's treating physician, Dr. Maneyapanda, opined that the plaintiff should "avoid work requiring prolonged standing, [and] repeated bending and standing," and that the plaintiff was "*very limited*" in her ability to push, pull, and bend. *Id.* at 15 (emphasis added). In making his RFC assessment, the ALJ determined that the plaintiff could perform light work, which involved sitting most of the time and *some* or *occasional* pushing and pulling. *Id*. Although the ALJ did not adopt the physician's opinion verbatim, the *Delisha* court found that the ALJ properly "formulated an RFC that conformed with the limitations identified by the opinion: avoiding 'prolonged standing' with an exertion level that accommodated 'sitting most of the time,' and limiting the pushing and pulling to only 'some' or 'occasional.'" *Id.* at 15–16.

In contrast, the Northern District of Ohio remanded a case where the ALJ failed to properly explain a conflict between his RFC determination and a medical opinion. *See Dominguez v. Comm'r of Soc. Sec.*, No. 1:16-cv-2769, 2017 U.S. Dist. LEXIS 196062, at \*29– 30 (N.D. Ohio Nov. 15, 2017), *adopted by Dominguez v. Comm'r of Soc. Sec.*, No. 1:16-cv-2769, 2017 U.S. Dist. LEXIS 196060 (N.D. Ohio, Nov. 29, 2017). A physician, Dr. Christman, opined that Dominguez had serious functional limitations as to lifting, walking, and standing. *Id.* at \*27. Specifically, Dr. Christman concluded, among other things, that Dominguez "can't lift

often and not much weight" and "could walk 10 minutes at a time during an eight-hour workday." *Id.* (internal quotations and citations omitted). Despite these limitations, the ALJ ultimately determined that Dominguez could perform light work, which requires lifting up to 20 pounds at a time, frequent lifting or carrying of objects weighing up to 10 pounds, and a "good deal of walking or standing." *Id.* at 29; *see also* 20 C.F.R. § 404.1567(b). The *Dominguez* court found the RFC to be in error because "it [was] unclear from the ALJ's opinion whether he considered and rejected [Dr. Christman's] additional limitations. *Id.* at 31–32. Consequently, the court was "deprive[d] . . . of the ability to conduct a meaningful review," necessitating a remand. *Id.* at 35.

This case is more similar to *Delisha* than *Dominguez*. Here, like in *Delisha*, it appears that ALJ Collins largely agreed with Dr. Sarpolis and rendered an RFC that, in accordance with Dr. Sarpolis's opinion and the other medical evidence in the record, significantly limits Bryson's ability to lift with her right extremity. [R. 14, p. 36]; *see* 2021 U.S. Dist. LEXIS 174996, at *15– 16. In other words, like in *Delisha*, ALJ Collins did not adopt Dr. Sarpolis's medical opinion verbatim, but still included limitations that conformed with the opinion. *See* 2021 U.S. Dist. LEXIS 174996, at *15–16; *contra Dominguez*, 2017 U.S. Dist. LEXIS 196062, at *29–30. Therefore, as this case is more analogous to *Delisha* than *Dominguez*, the Court finds that ALJ Collins' RFC determination, which expressly limits Bryson's ability to lift with her right extremity, did not conflict with Dr. Sarpolis's opinion. As such, "no further explanation from [ALJ Collins] is required." *Id.*

Further, there is no indication that a verbatim adoption of Dr. Sarpolis's findings would change Bryson's RFC. The vocational expert ("VE") testified that limitations in lifting with the right extremity would generally not affect Bryson's potential occupations because her potential

10

jobs would not require her to use one hand to lift. [R. 14, p. 91] ("I don't think there would be any impact on — on these particular occupations. There would be no point where they would just be forced to use the one hand to lift with."). In other words, since Bryson could lift up to 20 pounds occasionally and 10 pounds frequently with her *left* extremity, her overall lifting ability did not depend upon the strength of her *right* extremity. *See id.* Based on the VE's testimony, it appears that Bryson's RFC would have stayed the same regardless of whether she could lift "up to 10 pounds frequently" or "up to 5 pounds frequently." As such, the RFC determination was not inconsistent with Dr. Sarpolis' opinion, and, therefore, ALJ Collins was not required to explain why he did not directly adopt Dr. Sarpolis's finding. *See Delisha D*., 2021 U.S. Dist. LEXIS 174996, at *16.

    In any event, even if ALJ Collins erred in not explaining why he did not adopt Dr. Sarpolis's findings verbatim, the error is harmless. According to the Sixth Circuit, a court should only remand a case based on failure to follow administrative procedure if "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers v. Comm'r of Soc Sec*., 582 F.3d 647, 654 (6th Cir. 2009) (citation omitted). Again, for reasons discussed above, it is unlikely that Sarpolis's opinion would have changed Bryson's RFC determination. But even if ALJ Collins' RFC limited Bryson's right extremity to lifting "up to 5 pounds frequently," Bryson would still not be disabled under the Social Security Act, since the vocational examiner testified that Bryson would still be able to perform "sedentary" work that existed in significant levels in the national economy. [R. 14, pp. 91–92] (specifically noting jobs at the sedentary level such as final assembler, weight tester, and hand packagers). Therefore, remand would be inappropriate in this matter because Bryson has not been prejudiced on the merits or deprived of substantial rights based on the ALJ's alleged failure.

11

*See Bernard v. Berryhill*, No. 5:17-cv-0096-JMH, 2018 U.S. Dist. LEXIS 25110, at *16 (E.D. Ky. Feb. 14, 2018) (finding an alleged error harmless because "[e]ven if the ALJ erred when he limited Plaintiff to light rather than sedentary work, the vocational expert identified sedentary jobs in the national economy that Plaintiff could perform."). Accordingly, Bryson's objections that ALJ Collins' mishandled Dr. Sarpolis's opinion, and that the VE incorrectly determined employment availability based on an incorrect RFC are overruled. [R. 24, p. 2; R. 25, pp. 3–4].

### ii. Evaluation of Subjective Complaints of Back Pain

The ALJ may consider a claimant's credibility in weighing allegations of pain. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Under the regulations, however, a claimant's "subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability." *Duncan v. Sec'y of Health Servs.*, 801 F.2d 847, 852 (6th Cir. 1986) (citing 20 C.F.R. § 404.1529); *see also* 42 U.S.C. § 423(d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability[.]"). There must also be objective medical evidence of an underlying condition supporting allegations of pain. *Duncan*, 801 F.2d at 852. The Sixth Circuit evaluates subjective complaints of pain by way of a two-pronged test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994) (quoting *Duncan*, 801 F.2d at 853). The second prong of the test constitutes two alternatives, meaning a claimant must meet only one of the two elements. *Id.* at 1039.

12

If the claimant establishes one of those requirements, the SSA regulations direct the ALJ to consider the following factors in evaluating the claimant's subjective statements about the intensity and persistence of pain or other symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment other than medications received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms, such as lying down; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii); 416.929(c)(3)(i)–(vii). While the ALJ should consider the factors, she is not required to address each one in her opinion. *See Brewer v. Berryhill*, No. 6:16-cv-00108-GFVT, 2017 U.S. Dist. LEXIS 97075, at *14-15 (E.D. Ky. June 22, 2017) ("The regulations do not require a detailed, item-by-item discussion of each credibility factor…and although the ALJ should consider the factors, the ALJ need not engage in such an extensive analysis in every decision, especially where the medical record does not objectively support the claimant's allegations.").

"However, even when the medical records confirm the requisite objective medical condition supporting the claimant's complaints, 'an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.'" *Id.* at 10 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)). An ALJ's credibility findings are "to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531 (citing *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)). The federal courts will not substitute their own credibility

13

determination for that of the ALJ as the fundamental task of the Commissioner is to "resolve conflicts in the evidence and to decide questions of credibility." *Felisky*, 35 F.3d at 1035. However, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters*, 127 F.3d at 531 (citation omitted).

Here, Bryson contends that the RFC determination is not supported by substantial evidence because ALJ Collins failed to properly evaluate her subjective complaints of back pain and the medical evidence in the record. [R. 24, pp. 3–6]. Bryson alleges that her back pain, among other things, limits her ability to engage in daily activities that involve prolonged exertion, to stand and/or walk, and to lift/carry objects. [R. 14, p. 36]. ALJ Collins found that Bryson suffered from the following medically determinable impairments: chronic obstructive pulmonary disease, emphysema, obesity, hypothyroid/Hashimoto's, right shoulder high grade bursal side partial thickness and tear, degenerative disc disease, depressive disorder, post-traumatic stress disorder, and generalized anxiety disorder. *Id.* at 33. This finding is supported by substantial evidence. Accordingly, the first prong of the test is satisfied. However, ALJ Collins also found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]

*Id.* at 37.

As noted by ALJ Collins, the overall record does not support the alleged severity of Bryson's back pain. Pursuant to 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii) and 416.929(c)(3)(i)–(vii), ALJ Collins examined the other evidence in the record to substantiate Bryson's allegations of back pain, such as her daily activities, treatments (such as physical therapy, chiropractic therapy,

heat, ice, and stretching), and medical records [R. 14, pp. 37–38]. While an October 2018 MRI showed a posterior annular tear at L4-5 and L5-S1, and facet arthrosis, Bryson was able to treat such injuries via physical therapy, chiropractic therapy, heat, ice, pain medication, sleep/rest, and stretching. *Id.* at 37, 845–930, 959–1084. In addition, a final chiropractic exam in December 2018 revealed Bryson had a normal range of motion with only mild pain. *Id.* at 1086. Further, notes from Bryson's physical therapy also showed that despite a decreased lumbar range motion, a positive straight leg test, and spasms in the bilateral piriformis, Bryson was consistently observed with normal range of motion and gait. *Id.* at 37–38, 454, 485–86, 494, 509–10, 512, 515, 568, 658, 815, 826, 884, 892, 899, 907, 914, 939, 942, 964, 997, 1043, 1085. Finally, Bryson consistently failed to exhibit acute distress. *Id.* at 38, 458, 574, 581, 604, 764, 868, 875, 892, 907, 914.

In addition to the medical records, ALJ Collins also considered Bryson's daily activities, which include driving a car, shopping in stores, handling her own funds, light cleaning, spending time with others, and independently dressing and feeding herself. *Id.* at 38, 278–86, 319–27. ALJ Collins acknowledged that in November 2018, Bryson reported that she was able to perform her daily activities without difficulty. *Id.* at 38, 771. In addition, ALJ Collins considered the fact that Bryson has been sporadically employed since her alleged onset date. *Id.* at 38, 57–58, 262, 571, 661. The disparities between Bryson's activity levels and her alleged pain caused ALJ Collins to raise the question "as to whether [Bryson's] unemployment is actually due to medical impairments." *Id.* at 38. Such inquiry, however, does not go beyond ALJ Collins' authority. *See Brewer*, 2017 U.S. Dist. LEXIS 97075, at *10 ("[E]ven when the medical records confirm the requisite objective medical condition supporting the claimant's complaints, 'an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility

of a claimant when making a determination of disability.'"); *see also Jackson v. Comm'r of Soc. Sec.*, No. 1:10cv753, 2012 U.S. Dist. LEXIS 24195, at *12 (S.D. Ohio Feb. 27, 2012) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

Insofar as Bryson objects based on the ALJ's failure to "rationalize . . . contradictory fin[d]ings" in the medical record when crafting her RFC, her argument fails. [R. 24, p. 4]. First, as explained above, failure to cite specific evidence does not mean the ALJ failed to consider it. *See supra* Section III(A)(i); *see also Simons*, 114 F. App'x 733. And, although Bryson points to portions of Exhibit 16F that the ALJ failed to discuss, the ALJ cited to Exhibit 16F throughout his opinion, demonstrating that he considered the findings therein. [R. 14, pp. 33, 37, 38, 39]. Second, this Court is merely tasked with analyzing whether the ALJ's conclusion was supported by substantial evidence, *not* whether substantial evidence would have supported the opposite conclusion. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, *even if substantial evidence would also have supported the opposite conclusion*.") (emphasis added); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ([I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"). Third, ALJ Collins did not solely consider normal findings, but rather, cited many medical records both supporting and negating the alleged severity of her pain. [R. 14, pp. 37, 38, 39]. In fact, "to account for decreased agility from musculoskeletal symptoms," ALJ Collins restricted Bryson to light work, only "occasional climbing ramps and stairs, occasional stooping, and never climbing

ladders, ropes or scaffolds," even though Dr. Sarpolis opined that Bryson could perform medium work and occasionally climbing ladders, ropes, or scaffolds. *Id.* at 39–40; *see also* [R. 23, p. 12]. Finally, there is no evidence that the specific findings Bryson identifies justify a greater degree of limitation than determined by ALJ Collins. *See* [R. 24]; *see also* [R. 23, pp. 13–14]. As Magistrate Judge Lindsay correctly states, "[t]he ALJ never determined that Bryson had no pain; he just disagreed that her pain limited her to the extent she claimed and supported his position with medical evidence[.]" [R. 23, p. 14]. Accordingly, Bryson's objection is overruled.

Bryson also contends that ALJ Collins failed to consider the episodic nature of her back pain when discussing her daily activities. [R. 24, p. 5]. In support of her argument, she cites *Cohen v. Sec'y of Dep't of HHS*, 964 F.2d 524, 530 (6th Cir. 1992). Cohen suffered from Epstein-Barr virus and associated chronic fatigue syndrome. *Id.* at 528. When her illnesses were not flaring, Cohen was able to occasionally ballroom dance and complete one or two law school classes per semester. *Id.* at 530–31. But, when her illnesses flared, she was "confined to her bed for sixteen to eighteen hours a day, and even simple tasks such as grocery shopping [could] bring her near the point of collapse." *Id.* at 530. Nonetheless, the ALJ found that Cohen had the RFC to perform her past relevant work, and therefore, was not disabled. *Id.* at 528. In reaching this decision, the ALJ relied "primarily on the evidence of Cohen's level of activities" and not on the medical evidence and/or Cohen's testimony. *Id*. at 528, 531. The Sixth Circuit found such reliance to be in error and reversed and remanded to the district court with instructions to award benefits. *Id.* at 532. Specifically, the Sixth Circuit concluded that Cohen's sporadic activities alone, "while probative of whether she was capable of engaging in substantial gainful activity," did not provide a substantial basis for the ALJ's conclusion that Cohen was not disabled. *Id.* at 531; *see also Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981) ("Because the . . . period

wherein plaintiff attempted to work and attend school was unquestionably a period of remission, we believe the ALJ erred in placing *undue reliance* on this brief and temporary interruption of plaintiff's progressively disabling condition.") (emphasis added).

Here, unlike in *Cohen*, ALJ Collins did not rely on Bryson's activity levels to determine her RFC. *See Cohen*, 964 F.2d at 531; *see also Parish*, 642 F.2d at 193; [R. 14, p. 38]. Rather, he cited her activity levels after analyzing various medical records, which are outlined above. [R. 14, p. 38] ("*In addition to the medical evidence*, the record shows that the claimant has engaged in a somewhat normal level of daily activity and interaction.") (emphasis added); *see also* 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii); 416.929(c)(3)(i)–(vii). Put simply, Bryson's daily activities were just *one* of the *many* factors ALJ Collins considered when crafting Bryson's RFC. ALJ Collins properly considered Bryson's daily activities as "probative" evidence—not as the only evidence on which he relied when formulating Bryson's RFC. *See Cohen*, 964 F.2d at 530. Accordingly, ALJ Collins' RFC determination is supported by substantial evidence, and Bryson's objection as to this matter is overruled.

In sum, the Court finds ALJ Collins' appropriately evaluated Bryson's subjective complaints of back pain and the medical evidence in the record because it is clear—after a comprehensive and independent review of the record, administrative hearing, and medical documents—that ALJ Collins' findings were reasonable and supported by substantial evidence. *See Coney v. Comm'r of Soc. Sec.*, No. 1:12–CV–800, 2014 U.S. Dist. LEXIS 21290, at *26 (W.D. Mich. Jan. 31, 2014) ("[S]o long as the ALJ's determination is supported by substantial evidence, it must stand."). Bryson's objection as to this matter is overruled.

### iii.  Combination of Impairments

Bryson next argues that the ALJ failed to consider the severity of her impairments in combination. [R. 24, pp. 6–8]. Under the Social Security Act, an ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523(c); 416.923(c). Similarly, SSR 96-8p explains that, "[i]n assessing [RFC], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" 1996 SSR LEXIS 5, at *14; *see also Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020). However, an "ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citation omitted); *see also Gooch v. Sec'y of Health & Hum. Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) ("[T]he fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to 'a combination of impairments[.]'"). An ALJ's "express reference to SSR 96-8p," along with a "discussion of the functional limitations imposed by [the claimant's] nonsevere impairments" is sufficient to comply with 20 C.F.R. § 416.945 and SSR 96-8p. *Emard*, 953 F.3d at 852.

For example, in *Hill*, the plaintiff argued that the ALJ failed to consider the combined effects of all her impairments because "the ALJ failed to consider whether her bipolar disorder and obesity exacerbate[d] her neck, back, and knee pain." 560 F. App'x 547, 551 (6th Cir. 2014). The Sixth Circuit found the plaintiff's argument "meritless" because the ALJ stated in his opinion that the plaintiff "did not have a 'combination of impairments that meets or medically

equals one of the listed impairments[.]" *Id.* The *Hill* court found such statement to be a sufficient showing that the ALJ considered the combined effects of all of plaintiff's impairments. *Id.* Further, in *Burton*, the Sixth Circuit reasoned that the ALJ considered the claimant's combination of impairments when, in his opinion, he referred to the claimant's "impairments"— plural—in determining the claimant's RFC. 702 F. App'x at 437–38 (citing *Loy*, 901 F.2d at 1310).

Here, Bryson specifically argues that the ALJ failed to account for the effect of her anxiety and pain on her other limitations. [R. 24, p. 6]. But "[t]he substance of [ALJ Collins'] decision . . . indicates that [he] did consider the total limiting effect of [Bryson's] combined impairments." *Burton*, 702 F. App'x at 437–38. Notably, ALJ Collins references Bryson's anxiety and pain throughout his opinion. [R. 14, pp. 35, 36, 37, 38; *see also supra* Section III(A)(ii). ALJ Collins also cites to SSR 96-8p in stating that "the undersigned must consider all of the claimant's impairments, including impairments that are not severe." *See Emard*, 953 F.3d at 851–52 (finding that an ALJ complied with SSR 96-8p when he specifically noted "SSR 96-8p's mandate to 'consider all of the claimant's impairments, including impairments that are not severe'" and discussed the claimant's functional limitations). Like in *Hill*, ALJ Collins expressly stated that Bryson "does not have an impairment or *combination of impairments* that meets or medically equals the severity of one of the listed impairments[.]" [R. 14, p. 33] (emphasis added); *Hill*, 560 F. App'x at 551; *see also Loy*, 901 F.2d at 1310. Further, throughout his opinion, ALJ Collins refers to Bryson's "impairments"—plural. *See Burton*, 702 F. App'x at 437–38; *see also* [R. 14, pp. 33–42]. Therefore, the Court agrees with Magistrate Judge Lindsay that the Commissioner properly considered the combination of impairments in accordance with

SSR 96-8p and 20 C.F.R. §§ 404.1523(c); 416.923(c). *See* [R. 23, pp. 16–17]. Bryson's objection as to this matter is overruled.

### iv.   Weighing Opinion Evidence

Bryson next argues that the ALJ did not provide a sufficient narrative to explain how he weighed medical opinion evidence. [R. 24, pp. 8–9]. The ALJ makes an RFC determination based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c). In making the RFC determination, the ALJ must evaluate the persuasiveness of the medical source statements in the record and the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a), 416.920c, 416.929(a).

The new regulations, applicable to Bryson's case, state that "[an ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ will evaluate the "persuasiveness" of medical opinions and prior administrative findings by utilizing the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors that tend to support or contradict a medical opinion or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The most important factors are supportability[3] and consistency.[4] 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). The ALJ must explain how he considered the supportability and consistency factors in determining the persuasiveness of the

---

[3] "The more relevant the objective medical evidence and supporting explanations presented by the medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).

[4] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. § 404.1520c(c)(2).

medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). In contrast, ALJs

"may, but are not required to, explain how" they considered the other three factors in

determining the persuasiveness of the medical source's opinion. *Id.*

Here, Bryson argues that ALJ Collins' did not properly explain how he considered the

opinions of consultative examiner ("CE") Leslie Jenkins, Ph.D, and the opinions of the State

agency psychological consultants, Mary Thompson, Ph.D., and Garry Perry, Ed.D. [R. 24, p. 9].

ALJ Collins' assessment of all three opinions is as follows:

> The undersigned finds parts of the opinions of the State agency psychological
> consultants, Mary K. Thompson, PhD provided on May 9, 2018 at the initial level
> and Gary Perry, Ed.D provided on September 6, 2018 at the reconsideration level,
> and psychological consultative examiner, Leslie Jenkins, PhD provided on April 5,
> 2018, to be persuasive (Ex. 1A; 2A; 5A; 6A; 5F). The consultants opined that the
> claimant had a moderate limitation in adapting or managing oneself, but mild
> limitations in the remaining functional domains of understanding, remembering, or
> applying information, interacting with others, and concentrating, persisting, or
> maintaining pace. The consultative examiner opined a moderate to marked
> limitation in adapting or managing oneself, a mild limitation in concentrating,
> persisting, or maintaining pace, and no limitations in the remaining functional
> domains. Their finding of a moderate limitation in adapting or managing oneself is
> **supported** by documented review of the available medical evidence at the time of
> their review, as well as **consistent** with observations from the claimant's other
> medical providers, mental health treatment records, and mental status exam
> findings (*generally* Ex. 5F; 11F; 14F). That said, the record as a whole including,
> but not limited to, the claimant's subjective allegation, better supports moderate
> limitations in the remaining three functional domains, as discussed in detail under
> Step 3 (*generally* Ex. 5F; 11F; 14F; Hearing Testimony).

[R. 14, p. 39] (bolded emphasis added).

ALJ Collins' assessment is consistent with the new regulation because he evaluated the

persuasiveness of the three opinions by utilizing the two most important factors: supportability

and consistency. *See* 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). ALJ Collins

explicitly explained that the three opinions' "finding of a moderate limitation in adapting and

managing oneself" was supported by the medical evidence available at the time of the

evaluations. [R. 14, p. 39]. ALJ Collins further opined that such findings were consistent with the other medical evidence within the record *Id.* at 33–39. Specifically, ALJ Collins cited to Exhibits 11F and 14F, which, as explained by ALJ Collins earlier in his opinion, showed that on numerous occasions Bryson had: normal mood and affect, normal speech, appropriate eye contact, cooperative presentation, good insight and judgment, a goal-directed and logical thought process, normal perception, a well-groomed appearance, and the ability to manager her psychologically based symptoms. *Id.* at 35, 850–914, 946–958. Thus, upon independent review, ALJ Collins did not err when he stated that Exhibits 11F and 14F supported and were consistent with CE Jenkins, Dr. Thompson, and Perry's opinions. *Id.* The fact that ALJ Collins did not repeat his earlier assessment of these records in the portion of his opinion weighing the three opinions does not affect the sufficiency of his evaluation. Rather, the Court can "trace the path" of ALJ Collins' reasoning by his citations to the record and by the previous sections of his opinion. *See Stacey*, 451 F. App'x at 519 (explaining that the ALJ's decision must "say enough 'to allow the appellate court to trace the path of his reasoning.'"); *see also Claybrook v. Comm'r of Soc. Sec.*, No. 19–13682, 2020 U.S. Dist. LEXIS 246954 (E.D. Mich. Dec. 22, 2020) ("An ALJ's assessment of a medical opinion must be read together with the whole decision of the ALJ.").

Bryson's next argument, that ALJ Collins improperly relied on CE Jenkins' statement regarding potential symptom exaggeration, is without merit. [R. 24, p. 9; R. 14, p. 561]. Contrary to Bryson's argument, upon review of his opinion, it does not appear that ALJ Collins relied on this statement, even when questioning Bryson's true rationale for her unemployment. [R. 14, pp. 38–39]. Rather, ALJ Collins merely noted Jenkins' observation when summarizing the findings from the April 2018 consultative examination. *Id.* at 38. However, even if ALJ Collins

considered CE Jenkins' "concerns for exaggerated impairment," he would not have erred in doing so. *Id.* at 461; *see also Noble v. Colvin*, No. 5:12–cv–329–JMH, 2013 U.S. Dist. LEXIS 100089, at *15 (E.D. Ky. July 17, 2013) (citing *King v. Astrue*, No. 6:09–162–JMH, 2010 U.S. Dist. LEXIS 29459, 2010 WL 1257753, at *4 (E.D. Ky. Mar. 26, 2010)) ("Evidence of malingering is something that an ALJ is entitled to consider when deciding how much weight to assign a physician's opinion).[5]

Lastly, the Court is unconvinced by Bryson's argument that ALJ Collins' opinion lacked sufficient narrative explanation because he incorrectly stated that CE Jenkins opined a "moderate to marked limitation in adapting or managing oneself." [R. 24, pp. 8–9]. While Bryson is correct that CE Jenkins did not state that *exactly* (although Dr. Thompson and Perry did), CE Jenkins did find a moderate to marked limitation as to Bryson's "ability to tolerate stress and the pressure of day-to-day employment." [R. 14, pp. 114, 128, 562]. It appears that ALJ Collins rephrased and simplified CE Jenkins' findings so he could analyze Bryson's limitations in accordance with the four Paragraph B factors. *Id.* at 39. The Paragraph B factors examine the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A(2)(b). The domain of adapting and managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." *Id*. § 12.00E(4). As such, this domain clearly encompasses Bryson's ability "to tolerate stress and the pressure of day-to-day employment" as analyzed by CE Jenkins. Although ALJ Collins may not have clearly explained his reframing of CE Jenkins' opinion, the Court can trace his reasoning and his

---

[5] The Court recognizes that under the regulations applicable to Bryson's case, an ALJ does not assign "weight" to medical opinions. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). However, the Court has no reason to conclude that an ALJ cannot still consider malingering when evaluating the persuasiveness of medical opinions under the new standard.

analysis of the medical opinion. *See Stacey*, 451 F. App'x at 519 (explaining that the ALJ's decision must "say enough 'to allow the appellate court to trace the path of his reasoning.'").

ALJ Collins' discussion of the opinion evidence makes plain that he rejected a "marked" limitation in the domain of tolerating stress and the pressures of day-to-day employment. Plaintiff does not object to the ALJ's failure to find a marked limitation in this domain. [R. 24, pp. 8–9]. However, to be thorough, the Court notes that ALJ Collins provided sufficient narrative explanation for why a moderate limitation in the broader domain of "adapting or managing oneself," which, as the Court explained, includes the narrower ability to "tolerate stress and the pressures of day-to-day employment," was appropriate. He cited to his previous discussion under Step 3, in which he found that

> Treatment records sporadically documented limited insight and judgment . . . Yet, she generally had good insight and judgment, goal-directed and logical thought process and content, normal perception, and appropriate and well-groomed appearance . . . She consistently denied having suicidal or homicidal ideation . . . In addition, she is relatively independent in handling her personal needs and she is able to manage her psychologically based symptoms . . . Viewing the evidence in the light most favorable to the claimant, the undersigned finds that the claimant has no more than a moderate limitation in this domain.

[R. 14, p. 35] (internal citations omitted). After thorough examination of the medical records, ALJ Collins also found moderate limitations in the other three functional domains: understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. *Id.* at 34–35. Therefore, ALJ Collins found no more than a moderate limitation as to Bryson's ability to tolerate stress and the pressures of day-to-day employment.

Further, a finding of a moderate limitation as to the ability to tolerate stress and the pressure of day-to-day employment is consistent with ALJ's Collins' RFC determination, which incorporates limitations on workplace changes and Bryson's contact with supervisors,

coworkers, and the public, and limits Bryson to "simple routine tasks involving only simple work related decisions." [R. 14, p. 36]; *see Brill v. Saul*, No. 3:20-cv-05064-NKL, 2021 U.S. Dist. LEXIS 214308, at *10–12 (W.D. Mo. Nov. 5, 2021) (finding an RFC that limited the plaintiff's social interactions consistent with a medical opinion finding a "moderate limitation on the ability to get along with coworkers without distracting them or exhibiting behavioral extremes" because it accounted for the fact that the plaintiff could handle "some but not all interactions with coworkers[.]"). Thus, as there is no reason to believe that the result would change on remand, a remand is unnecessary. *See Kornecky,* 167 F. App'x at 507 ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."). Bryson's objection as to this issue is overruled.

### v.  Substantial Evidence

For the reasons stated above, ALJ Collins' decision is supported by substantial evidence. Thus, Bryson's general objection regarding substantial evidence, *see* [R. 24, p. 10], is overruled.

## IV.   CONCLUSION

The Court agrees with Magistrate Judge Lindsay that the Commissioner's decision was supported by substantial evidence and comported with procedural requirements. Accordingly, the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1.  The Commissioner's decision is **AFFIRMED**.

2.  The Magistrate Judge's Report and Recommendation, [**R. 23**], is **ADOPTED** as the opinion of this Court.

3.  Plaintiff's Objections, **[R. 24]**, are **OVERRULED**.

4.  A separate judgment shall issue contemporaneously with this Order.

This the 29th day of March, 2022.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY